In the Matter of the APPLICATION OF David C. PRIEST.

Appeal No. 78–511.

United States Court of Customs and Patent Appeals.

Aug. 17, 1978.

Eugene C. Trautlein, New York City, for appellant; James C. Arvantes, Union Carbide Corp., Arlington, Va., of counsel.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents; Gerald H. Bjorge, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

BALDWIN, Judge.

This appeal is from the decision of the Patent and Trademark Office (PTO) Board of Appeals (board) conditionally "reversing" the rejection of claims 11–16, 21 and 22 in appellant's application serial No. 417,487, filed November 20, 1973, for "Polymer/Polyols and Process for Production Thereof." The action taken by the board is modified.

### Invention

The inventions in the claims before us are "fluid polymer/polyol" compositions which

are convertible to polyurethane foams "having reduced scorch" or discoloration. The compositions are "free radical catalyst-catalyzed reaction product[s] formed by polymerizing" certain mixtures of acrylonitriles and styrene dissolved or dispersed in a denominated polyol.

Claim 11 is illustrative:

11. A fluid polymer/polyol composition which is convertible to a polyurethane foam having reduced scorch by reaction with water and an organic polyisocyanate and which is the free radical catalyst-catalyzed reaction product formed by polymerizing (1) from 10 to 30 weight percent of a mixture of (a) from 33 to 75 weight percent of acrylonitrile or methacrylonitrile and (b) from 25 to 67 weight percent styrene or alpha-methyl styrene, said weight percents of the nitrile and the styrene or alpha-methyl styrene being based on the total weight of those materials dissolved or dispersed in (2) from 70 to 90 weight percent of a normally liquid polyol having a hydroxyl number from 20 to 150, said weight percent of the mixture and polyol being based on the total weight of the monomers and the polyol and said polymer consisting essentially of polymer particles having diameters less than one micron suspended in the polyol.

### Background

The application as filed presented eighteen claims. Claims 1–10 were drawn to a process for the preparation of polymer/polyol compositions, claims 11–16 were drawn to the compositions per se, and claims 17 and 18 recited a method of producing a polyurethane foam by reacting and foaming the polymer/polyol compositions of claim 11 with an organic polyisocyanate.

In the first Office Action, claims 17 and 18 were withdrawn from consideration by the examiner pursuant to a telephone restriction requirement. Claims 1–17 [sic 16?] were rejected under 35 U.S.C. § 112, paragraph 1, for failing to recite a temperature of operation which was said by the examiner to be, in accordance with the specifica-

tion, a "critical limitation." The examiner further stated that because "of the absence of this important limitation, product-by-process claims 11–16 are also improper." The claims were similarly rejected for failure to recite the type of "polyol" required, the reaction apparatus, and the maintenance of a low monomer to polyol ratio. The claims were also rejected on prior art.

Appellant's first amendment presented additional process claims (19 and 20) and composition claims (21 and 22). In response to the rejection under 35 U.S.C. § 112, the appellant indicated that:

The Examiner correctly states that the temperature at which the instant process is performed is a critical limitation. However, this limitation is already effectively present in the instant process claims in view of the recitation therein that the process is conducted "while maintaining a low monomer to polyol ratio throughout the reaction mixture during the polymerization."

However, appellant questioned the examiner's characterization of the composition claims and the necessity of inserting a temperature limitation.

With particular reference to claims 11 to 16, those claims are not strictly "product by process" claims. Rather, those claims define the compositions as reaction products having compositional features, particularly the recited particle size. As so defined, the claimed compositions are clearly distinguished from the only art (Scharf) applied against the instant claims.

Accordingly, it would be redundant to insert a specific temperature limitation in the instant independent process claims and unnecessary to insert such a limitation in the instant independent composition claims.

Similar responses were made to the remaining rejections under 35 U.S.C. § 112. The prior art was discussed.

In the second and final rejection, the examiner adhered to each of the rejections found in the first Office Action and expanded upon the § 112 rejection stating:

B. Neither of the limitations as to temperature and apparatus is considered to be unnecessary or reduntant [sic] by the Examiner. These important limitations are the means used to achieve the desired and result, i. e. low monomer to polyol ratio. In this sense, these parameters should be included in the claims.

C. The instant composition claims are truly product by process claims. A material recited as the reaction product of certain ingredients is described in terms of a process. The presence of physical characteristics in the claim cannot change the nature of the claim as being a product by process.

D. The instant specification gives no indication as to the presence of any unsaturation in the polyols. The references cited by applicant do not persuade the Examiner in that purification procedures may be used to remove impurities. Most importantly, it appears that unsaturation is necessary in order to obtain grafting. The instant specification gives no indication of the degree of unsaturation which may be present or whether or not unsaturation is present at all. In this respect, the instant specification is clearly defective and insufficient.

Appellant submitted a further amendment which provided for the inclusion of a "back-mixed reactor" and a functional temperature in process claim 1. The § 112 rejections were reargued. An affidavit under 37 CFR 1.131 to antedate the prior art was offered and later submitted.

The examiner issued two Advisory Actions indicating, respectively, that appellant's arguments did not overcome the final rejection although the amendment would be entered upon the filing of an appeal and, the affidavit under 37 CFR 1.131 had been entered.

Appellant's Brief was filed and treated each of the points found in the Final Rejection.

In the Examiner's Answer, all prior grounds of rejection were withdrawn and process claims 1–10, 19 and 20 allowed. A new rejection was made:

Claims 11–16, 21, and 22 are rejected under 35 U.S.C. § 112, second paragraph as failing to particularly point out and distinctly claim the subject matter which applicant considers to be his invention and also under 35 U.S.C. § 112, first paragraph as encompassing subject matter not commensurate in scope with the enabling disclosure.

It is readily evident from the instant specification at page 4, lines 13–20 that the composition of the appealed claims is obtained only under specific and critical reaction conditions. This condition being the maintenance of low monomer to polyol ratio during the polymerization procedure. The criticality of this limitation is emphasized by applicant in his brief at pages 4–7. In particular, applicant points out that the prior art obtained large granules rather than small particle sizes because of nonadherence to this requirement.

It is the Examiner's position that the critical nature of this limitation requires that it be included in the instant product-by-process claims. Clearly, applicant does not recite the subject matter of his invention when the limitation is not included. Secondly, the absence of such a limitation in the claims causes them to encompass the production of a material outside the scope of the enabling disclosure.

In appellant's Reply Brief, it was argued: As is abundantly clear from the above disclosure, the use of the critical process feature results in compositions having a *critical compositional feature* (relatively small polymer granules) and that compositional feature *distinguishes the compositions from those of the prior art* being discussed. [Emphasis in original.]

And it was further stated:

It is quite clear that the appellant never regarded the process feature as a critical part of the aspect of his invention that relates to *compositions*. Thus, the appellant's generic disclosure and claims relating to his compositions have consistently been free of any reference to the process feature. [Emphasis in original.]

Appellant stressed the argument that he complied with § 112 in every way possible.

The board ostensibly reversed the holding of the examiner, but in doing so, stated in its opinion:

> We will not sustain this rejection. As correctly pointed out by appellant, the appealed claims do define what was always asserted to be the invention with sufficient particularity and specificity; the artisan would have no difficulty to ascertain [sic] its metes and bounds. True, an essential process parameter is not recited in the instant product claims, but such is not deemed to be necessary in view of the fact that the characteristic of the product due to the use of such parameter is described in the claims. The claims specifically state that the polymer particles have diameters less than one micron and such is obtained only when operating under particular reaction conditions; these conditions need thus not be described in the claims, they being a necessarily inferential limitation thereof.
>
> Accordingly, the decision of the Examiner is reversed.

Appellant objected in particular to the board's statement "they being a necessarily inferential limitation thereof," because it limits the claims on appeal to a construction which reads process limitations into composition claims. Since this would limit them to the particular process disclosed, the appellant filed a request for reconsideration asking the board to delete the sentence containing that statement. In a second opinion, denying the request, the board made even more specific its reading of the claims as though they contain limitations not expressed therein, making the following statements:

> Our holding reversing the Examiner was and remains predicated on the rationale embodied in the sentence appellant wishes us to strike from our decision

* * *. We have held appellant has complied with Section 112 of the Statute but only for the reason as stated by us and not because of the fact that the disclosure teaches one skilled [in the art] how to prepare the claimed composition.

> Accordingly, we decline to modify our decision and appellant's request is denied.

It is thus clear that without reading certain "necessarily inferential" "particular reaction conditions" into the claims on appeal, the board would not have reversed the examiner's rejection. Appellant is "dissatisfied" with that action of the board because he regards his claimed compositions as patentable under the statute without the limitations, has never intended to limit those claims to the particular process disclosed in this application, and feels that a court, in some future infringement action on the patent, would regard the claims as limited to the "particular reaction conditions" the board had in mind in "reversing" the examiner.

## OPINION

### I. Jurisdiction

The solicitor's argument that we lack jurisdiction under 35 U.S.C. § 141[1] for want of an adverse "decision" raises once more the meaning of that word in the statute. The PTO brief urges a meaning so rigid that, if adopted, it would necessarily exclude anything said by the board in support or explanation of its action relative to the examiner's rejection. This argument calls for a brief discussion of the distinction we have several times been called upon to make between "decisions" and "opinions."[2]

We first call attention to the fact that the board now entitles the paper by which it makes its actions known as "Opinion and Decision of the Board of Appeals," thus recognizing that they are two separate

---

1. 35 U.S.C. § 141 provides, in pertinent part:
   An applicant dissatisfied with the decision of the Board of Appeals may appeal to the United States Court of Customs and Patent Appeals * * *.

2. The solicitor cites *In re Willis*, 455 F.2d 1060, 59 CCPA 822, 172 USPQ 667 (1972); *In re Reese*, 359 F.2d 462, 53 CCPA 1099, 149 USPQ 362 (1966); *Klemperer v. Price*, 271 F.2d 743, 47 CCPA 729, 123 USPQ 539 (1959), and a number of other similar cases.

things. Prior to this, however, such document was called almost universally by it and the bar a "Decision," notwithstanding the self-evident fact that usually everything in the document except the final sentence was in reality an opinion. This practice is not peculiar to the PTO tribunals. It is commonplace in the law as evidenced by the definition in *Black's Law Dictionary*, revised 4th ed. (1965), quoted in part below:

DECISION. A popular rather than technical or legal word; a comprehensive term having no fixed, legal meaning. It may be employed as referring to ministerial acts as well as to those that are judicial or of a judicial character, * *. * * *

A judgment or decree pronounced by a court in settlement of a controversy submitted to it and by way of authoritative answer to the questions raised before it. * * *

The findings of fact and conclusions of law which must be in writing and filed with the clerk. * * *

A finding, as by a court, upon either a question of law or fact arising in a case. * * *

* * * * * *

The words "decision" and "judgment" may be used interchangeably, but in the abstract there is a shade of difference between the two. * * *

"Decision" is not necessarily synonymous with "opinion." A decision of the court is its judgment; the opinion is the reasons given for that judgment, or the expression of the views of the judge. * * But the two words are sometimes used interchangeably.

We have considered the cases cited by the PTO in which we refused to accept jurisdiction to review statements made by the board in its opinions extraneous to the decision rendered but displeasing to appellants. We find none of them to be factually comparable to the instant case.

Here, the board expressly finds process limitations to be inherently present in the appealed composition claims. Such limitations are not recited in the claims. Clearly, the very foundation of the board's decision to reverse the rejection makes its statements in the *opinion* an integral part of that *decision*.[3] As such, in this narrowly defined instance, these statements must be regarded as part of the "decision" of the board, within the purview of § 141 and subject to our review. We therefore hold that we have jurisdiction to examine the board's action on the merits.

## II. *Merits*

At the outset, we wish to make it quite clear that we agree with the board that the examiner's rejection should be reversed. However, the board erred when it added an "inferential limitation" to the claims in order to reach that decision.

The statute (35 U.S.C. § 131) requires that the "Commissioner shall cause an examination to be made of the * * * alleged new invention." That invention is the subject matter defined by the claims submitted by the applicant.[4] It is clear that the board did not consider the claimed invention to be allowable, but instead found some other non-claimed invention containing "inferential limitations" to comply with the statute. We have consistently held that no "applicant should have limitations of the specifications read into a claim where no express statement of the limitation is included in the claim." *In re Prater*, 415 F.2d 1393, 1405, 56 CCPA 1381, 1396, 162 USPQ 541, 551 (1969).

3. Any other result would exalt the formalities of wordmanship over the substance of the law. Judge Lane relevantly noted in *In re Dollinger*, 474 F.2d 1027, 1032, 177 USPQ 201, 205 (Cust. & Pat.App.1973), that "[w]hat the board did is the pertinent fact regardless of the tag placed on its action."

4. 35 U.S.C. § 112, paragraph two, states, in pertinent part:

The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

The statute (§ 131) continues "and if on such examination it appears that the applicant is entitled to a patent under the law, the Commissioner shall issue a patent therefor." The PTO has failed to comply with this statutory mandate and has issued a letter indicating the allowability of an invention not found in appellant's claims.

■ Thus, the board was in error when it added an "inferential limitation" to the claims. That error requires corrective action by this court. As we will now discuss, the examiner's rejection should have been reversed by the board without adding the "inferential limitations."

The examiner's rejection indicated that the "applicant does not recite the subject matter of his invention when the limitation [low monomer to polyol ratio] is not included" and hence the claims failed to comply with the second paragraph of 35 U.S.C. § 112. Further, the examiner alleged that the claims did not comply with the first paragraph of that statute since they encompassed "subject matter not commensurate in scope with the enabling disclosure."

The examiner, relying upon a recitation in the specification, argued that the "composition of the appealed claims is obtained only under specific and critical reaction conditions," i. e., maintaining a "low monomer to polyol ratio during the polymerization procedure." The criticality of the ratio was said to be "emphasized by applicant in his brief."

Upon consideration of the entire record, we conclude that the claims particularly point out and distinctly claim the subject matter which appellant regards as his invention, and consequently those claims comply with the second paragraph of 35 U.S.C. § 112.

An analysis of the claims in the manner described in *In re Moore*, 439 F.2d 1232, 58 CCPA 1042, 169 USPQ 236 (1971), further leads us to the conclusion that the scope of protection sought is supported by the disclosure. The disclosure indicates that the "polymer polyols produced by the process of this invention are novel compositions of matter characterized by the relatively small size of the polymers therein which greatly facilitates their preparation, handling and utility in producing polyurethane foams having less scorch." The claims are of similar scope. Neither the examiner nor the board indicated that the disclosure fails to teach one having ordinary skill in this art how to make and use *any* of the claimed compositions. A description of the compositions is also found in the specification. Accordingly, these claims meet the requirements of the first paragraph of 35 U.S.C. § 112.

### Summary

We conclude that claims 11–16, 21 and 22 comply with paragraphs one and two of 35 U.S.C. § 112 as they are drawn by appellant and without the "inferential limitations" included by the board. We, therefore, *affirm* the action of the board in reversing the examiner's rejection but *reverse* the board's action in reading limitations into the claims on appeal as a condition of said reversal.

*MODIFIED.*