Geoffrey MARGOLIS, Dean Frederick Rushmore, Richard Tien-Szu Liu, and Charles Hal Anderson, Petitioners,

v.

Donald W. BANNER, Commissioner of Patents and Trademarks, Respondent.

Appeal No. 79–538.

United States Court of Customs and Patent Appeals.

May 31, 1979.

---

William H. Vogt III, New York City (Watson, Leavenworth, Kelton & Taggart, New York City), attys. of record, for petitioners; Morris N. Reinisch, New York City, of counsel.

Joseph F. Nakamura, Washington, D.C., for the Commissioner of Patents, Jere W. Sears, Washington, D.C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE * and MILLER, Judges.

MILLER, Judge.

Petitioners seek issuance of writs of mandamus and prohibition to the Commissioner of Patents and Trademarks. Specifically, petitioners request this court to:

—issue a writ of mandamus directing the Commissioner to rescind and set aside the December 20, 1978 ruling of his delegate, William Feldman, Deputy Assistant Com-

---

* Judge Lane took part in the consideration and decision of this matter but died before the decision was announced.

missioner for Patents . . . that "this application became abandoned as of June 3, 1978";

—issue a writ of prohibition restraining the Commissioner, and those acting under his authority, from giving effect to the course of action set forth in the November 15, 1978 decision of his delegate, Herbert S. Vincent, Director of Patent Examining Group 170 . . . ., *viz.*, that under MPEP 804.03, "this application will be held to be abandoned if proper response to the [Examiner's] requirement is not made"; and

—grant such other and further relief as to this Court may seem just and proper in aid of preserving its appellate jurisdiction.

## Background

To fully appreciate petitioners' grievance, familiarity with the prosecution history of their application is required. The application[1] describes a process for the decaffeination of vegetable material such as roast coffee, green coffee, and tea, by contacting the vegetable material with a fatty material such as safflower oil. Petitioners disclose that if an *aqueous extract* of the vegetable material is held in contact with the fatty material at a temperature of *65°C or above* (range of 65°C–150°C is disclosed), the rate of transfer of caffeine from the aqueous extract to the fatty material is increased and the ease of separation of the two liquid phases is facilitated—all without adverse flavor effects. Petitioners' application incorporates by reference United States patent application serial No. 605,717 of Pagliaro et al., filed August 18, 1975, now abandoned in favor of continuation-in-part application serial No. 742,094, filed November 16, 1976.[2] The later application claims the broad invention (no temperature specified, as such) of contacting a vegetable material, in either an aqueous extract or solid form, with a fatty material to effect decaffeination. With an *aqueous extract* a preferred contact temperature range of 0°C–50°C is claimed, and excessively high temperatures are avoided. When a *solid* vegetable material is used, temperatures of 50°C–120°C are claimed. In their petition before us, petitioners describe their invention as "a further advance in the art and an improvement over the basic invention claimed by Pagliaro et al."[3]

In the first office action, the examiner rejected petitioner's claims under 35 U.S.C. § 103 (based on 35 U.S.C. § 102 (g) ) on, *inter alia*, the disclosure of then copending Pagliaro et al. application serial No. 605,-717. Petitioners responded by arguing that the disclosure of a pending application is *not* available as citable prior art under 35 U.S.C. § 102(g). Unpersuaded, the examiner substantially repeated the rejection in a second office action, this time relying on the disclosure of Pagliaro et al. application serial No. 742,094, his application serial No. 605,717 having been abandoned. The examiner ruled that the different inventive entities of application serial No. 742,094 and the instant application "are claiming a single inventive concept including variations of the same concept each of which would be obvious in view of the other," and, for the first time, made a request which is the genesis of the petition before us:

> Specifically applicants claim in 690,732 decaffeinating a caffeine containing extract of vegetable material with a liquid water immiscible fatty material where the phases of fatty material and aqueous extract are maintained in contact at 65°C or above, whereas in application Serial

---

1. Application serial No. 690,732, filed May 27, 1976.

2. This application has been on appeal to the United States Patent and Trademark Office ("PTO") Board of Appeals since July 10, 1978. The applications of petitioners and Pagliaro et al. are assigned to Societe d' Assistance Technique pour Produits Nestle, S.A., a Swiss corporation.

3. Our review of the file wrapper indicates that petitioners, from the beginning of prosecution, characterized their invention as an improvement over the basic invention claimed by Pagliaro et al. As exemplified in their Jepson-type claims referring to the "improvement," this clearly says that their invention was *subsequent in time* to the invention of Pagliaro et al.

No. 742,094 applicant recites contacting a caffeine containing composition with a liquid water immiscible fatty material at a temperature between 50°C and 120°C. The composition is defined as an aqueous extract of tea, of roast coffee, etc. *Accordingly in accordance with MPEP 804.-03*[4] *since in the Examiner's opinion there are conflicting claims in the case, the assignee is called on to state which entity is the prior inventor of the subject matter and to limit the claims of the other application accordingly.* [Emphasis added.]

The response to the examiner's request was due on June 2, 1978, and petitioners responded on that date. They argued, as they had previously, that the disclosure of a pending application is not available as citable prior art under 35 U.S.C. § 102(g); further that there were no conflicting claims since their application claimed the use of an aqueous extract of vegetable material with a contact temperature of at least about 65°C; whereas, contrary to the examiner's interpretation, serial No. 742,094 disclosed that when aqueous extracts are used, contact temperatures should not exceed 50°C. They also pointed out that, contrary to the examiner's interpretation, only when the vegetable material is solid is the contact temperature to be between 50°C and 120°C. With respect to the examiner's request, petitioners stated:

> The Examiner's assertion of applicability of MPEP 804.03 is misplaced, and is

traversed. A reading of the claims in the respective applications shows that there are no conflicting claims, and that the two applications are indeed directed to distinct and different inventions, claimed by different inventive entities. The claims of the two applications have been and are limited to the respective inventive contributions. The applicants in Serial No. 742,094 are the inventors of the subject matter claimed therein; and the applicants in the present application are the inventors of the subject matter claimed herein.

Subsequently, on June 30, 1978, petitioners filed a Notice of Appeal on the 35 U.S.C. § 103 rejection, based on 35 U.S.C. § 102(g), to the Board of Appeals.

In a third office action dated August 8, 1978, which was made final, the examiner withdrew the rejection under 35 U.S.C. § 103, apparently agreeing with petitioners' arguments that under the prevailing case law a pending application is not citable as prior art for purposes of 35 U.S.C. § 102(g).[5] However, he maintained his position that petitioners' claims and those in serial No. 742,094 were directed to "a single inventive concept including variations thereof each [of] which would be obvious in view of the others." Repeating his prior request, the examiner stated:

> [A]pplicants are once again called on to state *which entity is the prior inventor of the subject matter* and to limit the claims

---

4. The Manual of Patent Examining Procedure ("MPEP") 804.03, which is based on 37 CFR 1.78(c) (note 8, *infra*), provides, in pertinent part:

> 804.03 *Terminal Disclaimer Not Applicable—Commonly Owned Cases of Different Inventive Entities* [R–53]
>
> . . . . .
>
> In view of 35 U.S.C. 135, it is necessary to determine priority of invention whenever two different inventive entities are claiming a single inventive concept, including variations of the same concept each of which would be obvious in view of the other. This is true regardless of ownership and the provision of 37 CFR 1.201(c) that interferences will not be declared or continued between commonly owned cases unless good cause is shown therefor. A terminal disclaimer can have no effect in this situation, since the basis for

refusing more than one patent is 35 U.S.C. 102 or 103, and is not connected with any extension of monopoly.

Accordingly, the assignee of two or more cases of different inventive entities, containing conflicting claims must maintain a line of demarcation between them. If such a line is not maintained, the assignee should be called on to state which entity is the prior inventor of that subject matter and to limit the claims of the other application accordingly. If the assignee does not comply with this requirement, the case in which the requirement to name the prior inventor was made will be held abandoned.

5. Although the examiner also made a 35 U.S.C. § 112 rejection, as a result of a personal interview with counsel for petitioners, this rejection was withdrawn.

of the other application accordingly. If the assignee does not comply with this requirement, this case will be held to be abandoned as per MPEP 804.03. [Emphasis added.]

In addition, the examiner said that the *claims of Pagliaro et al.'s application* (serial No. 742,094) should be amended to expressly exclude petitioners' claimed temperature range when an aqueous extract is used. Thus, at this stage of prosecution, no rejections, labelled as such, remained. Accordingly, on or about August 15, 1978, petitioners withdrew their appeal to the Board of Appeals.

Having failed to persuade the examiner that he was in error, petitioners then petitioned the Commissioner pursuant to CFR 1.181(a)[6] and 1.183.[7] The decision with respect to that part of the petition relating to 37 CFR 1.181(a) was delegated to the Director of Patent Examining Group 170. The Group Director denied that part of the petition in a ruling dated November 15, 1978:

It is apparent from a review of the examiner's action that he has carefully considered applicants' arguments in this matter. There is no clear error in the examiner's conclusion that a line of demarcation has not been maintained between the claims of the commonly assigned applications. Moreover, assuming arguendo that the assignee is of the correct opinion that no conflict exists, there is no provision that enables the assignee to delay naming the prior inventor. Thus it is not seen that the examiner has abused his authority in making the requirement and the petition is *denied.*

The consequences of failing to comply with this requirement are clearly identified in M.P.E.P. 804.03 and this application will be held to be abandoned if proper response to the requirement is not made. The period for response is extended to expire *FOUR MONTHS* from August 8, 1978, the date of the final rejection.

It is noted that the avenue of appeal becomes open in the event applicant should disagree with any rejection based on the election. [Emphasis in original.]

The portion of the petition relating to 37 CFR 1.183, which was a request to waive 37 CFR 1.78(c).[8] was denied on December 20, 1978, by the Deputy Assistant Commissioner for Patents, who stated:

The provisions of 37 CFR 1.183 permit the Commissioner to waive or suspend any requirement of the regulations which is not a requirement of the statutes in an extra-ordinary situation when justice requires. Since the assignee has the unique knowledge of invention dates pertaining to conflicting claims in commonly assigned applications, the consequences associated with withholding this information, which is relevant to a determination of patentability in those applications, are calculated to induce compliance with the requirement. As such, this is not deemed an extraordinary situation wherein justice requires waiver or suspension of the rules.

6. *§ 1.181 Petition to the Commissioner.*
    (a) Petition may be taken to the Commissioner (1) from any action or requirement of any examiner in the ex parte prosecution of an application which is not subject to appeal to the Board of Appeals or to the court; (2) in cases in which a statute or the rules specify that the matter is to be determined directly by or reviewed by the Commissioner; and (3) to invoke the supervisory authority of the Commissioner in appropriate circumstances.

7. *§ 1.183 Suspension of rules.*
    In an extraordinary situation, when justice requires, any requirement of the regulations in this part which is not a requirement of the statutes may be suspended or waived by the Commissioner in person on petition of the interested party, subject to such other requirements as may be imposed.

8. 37 CFR 1.78(c) reads:
    Where two or more applications, or an application and a patent naming different inventors and owned by the same party contain conflicting claims, the assignee may be called upon to state which named inventor is the prior inventor. In addition to making said statement, the assignee may also explain why an interference should be declared or that *no conflict exists in fact.*

The Deputy Assistant Commissioner did not stop there. Notwithstanding the fact that the examiner had issued a third and final office action and that the Group Director, who decided the portion of the petition relating to 37 CFR 1.181(a), had extended the period to respond to that office action, the Deputy Assistant Commissioner ruled that petitioners' application became abandoned as of June 3, 1978. He reasoned that since petitioners' response to the second office action[9] failed to specify who was the prior inventor, as requested by the examiner, and since that failure was not inadvertent, the application became abandoned for failure to prosecute by virtue of 35 U.S.C. § 133[10] and 37 CFR 1.135.[11] The petition before us followed.

## OPINION

The threshold question is whether this court has the *power* to issue the requested writs, as distinguished from the question of whether the court, in its discretion, should exercise that power. *Cf. La Buy v. Howes Leather Co.,* 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957); *Roche v. Evaporated Milk Ass'n,* 319 U.S. 21, 63 S.Ct. 938, 87 L.Ed. 1185 (1943); *Reddy v. Dann,* 529 F.2d 1347, 188 U.S.P.Q. 644 (CCPA

1976). The solicitor's position is that this court lacks such power since it has no jurisdiction, by appeal or otherwise, to review a decision by the Commissioner holding an application abandoned. However, under 28 U.S.C. § 1651(a),[12] the All Writs Act, this court has the power to issue all writs necessary or appropriate "in aid of" its appellate jurisdiction. *Loshbough v. Allen,* 404 F.2d 1400, 56 CCPA 913, 160 U.S.P.Q. 204 (1969). Since the All Writs Act is not an independent grant of appellate jurisdiction, the appellate jurisdiction for which the writs are "in aid of" must have some other basis. *See Roche v. Evaporated Milk Ass'n, supra,* 319 U.S. at 23–26, 63 S.Ct. 938; *Goodbar v. Banner,* No. 79–555, 599 F.2d 431 (Cust. & Pat.App.1979); *Formica Corp. v. Lefkowitz,* 590 F.2d 915, 200 U.S.P.Q. 641 (CCPA 1979). While it is generally true that this court does not have appellate jurisdiction to review decisions of the Commissioner in patent matters, *In re Wiechert,* 370 F.2d 927, 54 CCPA 957, 152 U.S.P.Q. 247 (1967), except indirectly with respect to decisions on matters which are ancillary to priority in an interference, *see Godtfredsen v. Banner,* No. 79–514, 598 F.2d 589 (Cust. & Pat.App. 1979), and *Duffy v. Tegtmeyer,* 489 F.2d 745, 180 U.S.P.Q. 317 (CCPA 1974), the court clearly has the power to issue writs

---

**9.** As discussed *supra,* the response to this office action was due on June 2, 1978, and petitioners responded on that date.

**10.** *§ 133. Time for prosecuting application*
Upon failure of the applicant to prosecute the application within six months after any action therein, of which notice has been given or mailed to the applicant, or within such shorter time, not less than thirty days, as fixed by the Commissioner in such action, the application shall be regarded as abandoned by the parties thereto, unless it be shown to the satisfaction of the Commissioner that such delay was unavoidable.

**11.** *§ 1.135 Abandonment for failure to respond within time limit.*
(a) If an applicant fails to prosecute his application within six months after the date when the last official notice of any action by the Office was mailed to him, or within such shorter time as may be fixed (§ 1.136), the application will become abandoned.
(b) Prosecution of an application to save it from abandonment must include such complete and proper action as the condition of the case may require. The admission of an

amendment not responsive to the last official action, or refusal to admit the same, and any proceedings relative thereto, shall not operate to save the application from abandonment.
(c) When action by the applicant is a bona fide attempt to advance the case to final action, and is substantially a complete response to the examiner's action, but consideration of some matter or compliance with some requirement has been inadvertently omitted, opportunity to explain and supply the omission may be given before the question of abandonment is considered.
(d) Prompt ratification or filing of a correctly signed copy may be accepted in case of an unsigned or improperly signed paper. (See § 1.7.)

**12.** *§ 1651 Writs*
(a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

under the All Writs Act in aid of its prospective appellate jurisdiction in the face of action by the Commissioner or those acting under his authority that would frustrate such prospective appellate jurisdiction. *See Roche v. Evaporated Milk Ass'n, supra,* 319 U.S. at 25–26, 63 S.Ct. 938; *McClellan v. Carland,* 217 U.S. 268, 280, 30 S.Ct. 501, 54 L.Ed. 762 (1910); *National Farmers' Organization, Inc. v. Oliver,* 530 F.2d 815, 816–17 (8th Cir. 1976); *Environmental Defense Fund, Inc. v. Ruckelshaus,* 142 U.S.App.D.C. 74, 82–3, 439 F.2d 584, 592–93 (1971). As developed hereinafter, the ruling of abandonment by the Deputy Assistant Commissioner was such an action in that it prevented an appeal of the examiner's action to the Board of Appeals from whose decision an appeal might be taken to this court.[13]

As related above, the examiner requested, under threat of abandonment of the application, that petitioners state which inventive entity, petitioners or Pagliaro et al., "is the prior inventor of the subject matter [of allegedly conflicting claims]," [14] and that petitioners' assignee limit the claims of the other application accordingly.[15]   37 CFR 1.78(c) sets forth the requirement that petitioners state "which named inventor [as between Pagliaro et al. and petitioners] is the prior inventor.[16]   The regulation does

not provide that, upon threat of abandonment of their application, petitioners may be required to state which inventive entity is the prior inventor of the subject matter of conflicting claims, MPEP 804.03 to the contrary notwithstanding.   If petitioners did not believe there were conflicting claims, their only available response was to state who is the prior inventor of their respective inventions.   Indeed, 37 CFR 1.78(c) clearly provides that petitioners have the right to explain "that no conflict exists in fact."   They exercised this right by traversing the examiner's assertion of the applicability of MPEP 804.03.

Petitioners responded to the requirement of 37 CFR 1.78(c) by stating that "the applicants in Serial No. 742,094 are the inventors of the subject matter claimed therein; and the applicants in the present application are the inventors of the subject matter claimed herein."   In the context of petitioners' claims to an "improvement" over the basic Pagliaro et al. invention, their response to the examiner clearly was that their invention was *later* than the invention of "[t]he applicants in Serial No. 742,094," and the requirement of 37 CFR 1.78(c) was satisfied.   The examiner's 35 U.S.C. § 103 rejection (based on 35 U.S.C. § 102(g)) [17] in his

---

**13.** This does not mean that every ruling of abandonment will support the issuance of a writ of mandamus or prohibition.   Only under extraordinary circumstances or when there is a clear abuse of discretion will this court issue such a writ.

**14.** Although the regulations do not define "conflicting claims," MPEP 804.03 uses this term to describe "a single inventive concept [claimed by different inventive entities], including variations of the same concept each of which would be obvious in view of the other."   Since the examiner's request was based upon MPEP 804.03, we will accept this as a definition of "conflicting claims" for purposes of this appeal.   However, it is unnecessary for us to decide whether, in fact, there are conflicting claims.

Although the examiner stated in his second office action that "there are conflicting claims in the [petitioners'] case" and in his third office action that petitioners' claims and the claims of Pagliaro et al. are directed to "a single inventive concept including [obvious] variations thereof," he did not specify the "subject matter" (nor did he specify which of petitioners'

claims conflicted with the claims of the Pagliaro et al. application) for which petitioners were to name the prior inventor.   It is incumbent upon an examiner in making a request pursuant to 37 CFR 1.78(c) to specify the "subject matter" so that an applicant *can* name the *prior inventor thereof.*

**15.** In the third office action, the examiner suggested specific changes in the claims of the Pagliaro et al. application that he regarded as essential.

**16.** 37 CFR 1.78(c) was promulgated for the purpose of providing a "basis for requiring a determination of priority without an interference by the common owner of a plurality of applications, or patent and applications, containing conflicting claims."   36 Fed.Reg. 7312 (1971).

**17.** We express no opinion regarding the propriety of a 35 U.S.C. § 103 rejection based upon a pending application as prior art under 35 U.S.C. § 102(g), the issue not being before us.

first office action demonstrates his understanding that petitioners' invention was later, as does his repetition of the rejection in his second office action. Also, in his first office action, the examiner referred to certain statements in petitioners' specification as evidence of a concession that the Pagliaro et al. "application 605,717 . . . [is considered] to be prior art."

Essentially, the subject matter of petitioners' allegedly conflicting claims is a process for decaffeination of coffee in an aqueous solution at a temperature of at least 65°C. Pagliaro et al., in their application No. 742,094, now pending before the Board of Appeals, claims such a process (a) broadly, with no temperature specified, as such, and (b) preferably, with the temperature not in excess of 50°C. The Solicitor suggests that petitioners, in their response to the examiner's request, should have assumed that their claims were in "conflict" with the claims of Pagliaro et al. and then, on this assumption, should have named the first inventor of those conflicting claims. Such a suggestion indicates that the Solicitor fails to appreciate that petitioners *did* name the first inventor. Petitioners stated that they were the first to invent the subject matter of *their* claims (deemed "conflicting" by the examiner). However, they could not truthfully state that Pagliaro et al. were the "prior inventor" of the *whole* subject matter of petitioners' allegedly conflicting claims.[18] Moreover, under 37 CFR 1.78(c), petitioners had the right, which they properly exercised, to traverse the examiner's assertion of the applicability of MPEP 804.03.

Because the record in this case shows (a) what was invented by one applicant (petitioners), (b) what was invented by the other applicant (Pagliaro et al.), and (c) who was the prior inventor of the respective inventions, the requirement for information under 37 CFR 1.78(c) was satisfied. Thereafter, the examiner had all of the information needed to assert a 35 U.S.C. § 103 rejection, based upon 35 U.S.C. § 102(g), if he concluded that the subject matter of petitioners' claims would have been an obvious variation of the subject matter of the claims of the Pagliaro et al. application.[19] The correctness of such a rejection, as noted by the Group Director in his decision upholding the examiner's request, would be reviewable on appeal to the Board of Appeals.[20] If the board upheld the examiner's decision, this would be reviewable by this court under 35 U.S.C. § 141.

Under these circumstances, the examiner's citation of MPEP 804.03 as authority to authorize abandonment of petitioners' application was misplaced.

█ Moreover, we are persuaded that the examiner improperly required, under threat of abandonment per MPEP 804.03, that petitioners' assignee limit the claims of the Pagliaro et al. application. *See In re Mott,* 539 F.2d 1291, 190 U.S.P.Q. 536 (CCPA 1976). Although 37 CFR 1.78(b) provides for "elimination" of conflicting claims from all but one application of the same applicant, 37 CFR 1.78(c) provides no such authority when the applications are from different inventors and are owned by a common assignee,[21] and to the extent that

18. Such a statement would have been contrary to their oath. Moreover, to require a response wherein petitioners, in one breath, would make a statement that is clearly untrue on the record before us, and, in the next breath, would deny that statement, would be absurd.

19. For the examiner to have required a binding admission that there are conflicting claims and (under the above-cited definition of "conflicting claims" by MPEP 804.03) that petitioners' claims are obvious variations over the claims of Pagliaro et al. would have been beyond his authority under 37 CFR 1.78(c).

20. It is particularly noteworthy that such a rejection (the very rejection which the Group Director indicated would be appealable) had been made, but then withdrawn after petitioners responded to the examiner's request (in the second office action) and filed an appeal of that rejection with the Board of Appeals. Withdrawal of the rejection, of course, frustrated the appeal.

21. Thus, when the claims of a subsequent application conflict with those of an earlier application of the same inventor, such conflicting claims (which would have been obvious variations over the claims of the earlier application)

MPEP 804.03 undertakes to authorize such action, it is invalid.

■ Accordingly, we conclude that the examiner's demands, under threat of abandonment, that petitioners do more than they did amounted to a *de facto* rejection of petitioners' claims.[22] *See In re Haas,* 486 F.2d 1053, 179 U.S.P.Q. 623 (CCPA 1973); *cf. In re Priest,* 582 F.2d 33, 199 U.S.P.Q. 11 (CCPA 1978). The subsequent ruling of abandonment by the Deputy Assistant Commissioner, precluding petitioners from an appeal to the Board of Appeals from the *de facto* rejection, clearly had the effect of frustrating this court's prospective appellate jurisdiction over an appeal from a decision of the Board of Appeals. As the Supreme Court stated in *Roche v. Evaporated Milk Ass'n, supra,* 319 U.S. at 25, 63 S.Ct. at 941:

> [A]uthority is not confined to the issuance of writs in aid of a jurisdiction already acquired by appeal but extends to those cases which are within its appellate jurisdiction although no appeal has been perfected. Otherwise the appellate jurisdiction could be defeated and the purpose of the statute authorizing the writ thwarted by unauthorized action of the district court obstructing the appeal. [Citations omitted.]

*Accord, National Farmers' Organization, Inc. v. Oliver, supra* at 816; *International Business Machines Corp. v. Edelstein,* 526 F.2d 37, 40–41 (2d Cir. 1975).

■ The remaining question is whether this court *should* exercise its power to issue the writs petitioners seek, recognizing that they are to be issued only in extraordinary circumstances when no meaningful alternatives are available. *Kerr v. United States District Court,* 426 U.S. 394, 403, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976). As to the requested writ of mandamus to rescind and set aside the December 20, 1978, ruling of the Deputy Assistant Commissioner for Patents that petitioners' application became abandoned as of June 3, 1978, we are persuaded that no other adequate means is available that would permit petitioners to obtain review by the Board of Appeals and to secure this court's eventual appellate jurisdiction. We agree with petitioners that the Solicitor's suggestion that they should first petition the Commissioner to revive their application is tantamount to having petitioners do a useless act.[23]

The Solicitor also suggests that petitioners pursue their rights in an appropriate district court so that eventual appeal to the Board of Appeals and then to this court would be available. Although this could be done, such an alternative is not consonant with the purposes of the All Writs Act, because it would place in another court the discretionary power to preserve the prospective appellate jurisdiction of this court sought by petitioners. *See Roche v. Evaporated Milk Ass'n, supra; Maryland v. Soper,* 270 U.S. 9, 30, 46 S.Ct. 185, 70 L.Ed. 449 (1926); *World-Wide Volkswagen Corp. v.*

---

may be inserted into the earlier application; however, that option is not available when the two applications have *different* inventors.

22. In his summary of an interview with petitioners' lawyer subsequent to the third and final office action, the examiner wrote: "Exr [Examiner] was of the opinion that cls [claims] of this case + Appln Ser N 742094 were not distinguishable + there was no clear line of demarcation." Thus, the only apparent basis for such a rejection is that petitioners' claims would have been obvious over those of the Pagliaro et al. application. The question of prior inventorship was, ostensibly, fully resolved to the satisfaction of the examiner.

23. 37 CFR 1.137 provides for revival of an abandoned application as follows:

An application abandoned for failure to prosecute may be revived as a pending application if it is shown to the satisfaction of the Commissioner that the *delay was unavoidable.* A petition to revive an abandoned application must be accompanied by a verified showing of the causes of the delay, by the proposed response unless it has been previously filed, and by the petition fee. [Emphasis added.]

As related above, the Deputy Assistant Commissioner determined that petitioners' failure to specify who was the prior inventor was not inadvertent, so it could not be shown that the "delay was unavoidable" for purposes of 37 CFR 1.137.

*United States International Trade Commission,* 414 F.Supp. 713, 716, 191 U.S.P.Q. 626, 628 (D.D.C.1976). Moreover, the alternative would also entail an unnecessary expenditure of scarce judicial resources.

Accordingly, we are satisfied that a writ of mandamus to vacate the ruling of abandonment should be issued, and the writ is, hereby, issued.

As to the requested writ of prohibition restraining the Commissioner from giving effect to the course of action established by the November 15, 1978, decision of the Director of Patent Examining Group 170, such a writ appears unnecessary in view of our decision that a "proper response" to the examiner's requirement for information under 37 CFR 1.78(c) has been made, thus rendering moot any proposed action for failure to properly respond.

*WRIT OF MANDAMUS GRANTED.*