RAY EVERS WELDING CO., Petitioner,

v.

OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMIS-
SION, Respondent.

No. 77-3581.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 6, 1980.

Decided April 29, 1980.

As Amended July 17, 1980.

Edwards, Chief Judge, dissented and filed opinion.

Daniel P. Dooley, Frost & Jacobs, Cincinnati, Ohio, for petitioner.

William S. McLaughlin, Executive Secretary, O. S. H. R. C., Washington, D. C., Bettye J. Harris, Thomas L. Holzman, William G. Staton, Allen H. Sachsel, Dept. of Justice, Washington, D. C., for respondent.

Before EDWARDS, Chief Judge and WEICK and BROWN, Circuit Judges.

WEICK, Circuit Judge.

Ray Evers Welding Company (Evers), an employer, has petitioned this court to review the final decision and order of the Occupational Safety and Health Review Commission (OSHRC) holding Evers liable for an alleged serious violation of Section 5(a)(2)[1] of the Occupational Safety and Health Act of 1970 (29 U.S.C. § 654(a)(2)) for neglecting to require its employees to use appropriate personal protection equipment (safety belts and lanyards) allegedly mandated under the Secretary's regulation 29 CFR § 1926.28(a),[2] and assessing a civil penalty of $200.00 therefor. The issues presented to this court are whether there is substantial evidence to support each element of the violation upon which the Secretary had the burden of proof. As circumscribed herein, we uphold the regulation but are of the opinion that no violation was shown by substantial evidence.

I

The facts leading up to the citation are undisputed. Evers was employed by Warren Brothers Company to erect the structural frame of a one-story, pre-engineered, warehouse building designed by Warren Brothers. The OSHA inspection occurred during the finishing stages of the steel work when Evers' employees were in the process of attaching roof supports known as "knee braces." This process required that an employee get up on the roof girders and move to where a cross beam (called a purlin) intersects with the roof girder. The employee would then bolt one end of a steel brace to the roof girder upon which he was sitting and the other end to the purlin at a point a couple of feet out from the point of intersection between the purlin and the roof girder. This whole operation takes between 5 and 10 minutes to complete. During this time the employee is relatively stationary, but must do a lot of leaning and maneuvering. The employee then moves along the roof girder either by walking on top of the girder or by stradling the girder and walking on its lower flanges to the next point where a brace was to be attached. (Knee braces are attached to every other purlin.) The Citation and the Complaint both alleged that Evers' employees were working at heights of between 18 and 21 feet above ground and that the employees were not required by the company to wear safety belts and lanyards. These allegations were admitted by the employer.[3]

1. Section 5(a)(2) of the Act provides:

   Each employer shall comply with occupational safety and health standards promulgated under this Act.

2. 29 CFR § 1926.28(a) provides:

   The employer is responsible for requiring the wearing of appropriate personal protective equipment in all operations where there is an exposure to hazardous conditions or where this part indicates the need for using such equipment to reduce the hazards to employees.

3. There is no evidence to support the Administrative Law Judge's speculation that a hazard of a fall over 25 feet existed with respect to

After reviewing the evidence, the ALJ and the Review Commission found that a violation of § 1926.28(a) was shown by the employer's failure to require employees to wear safety belts attached by lanyards to purlins when the employees were attaching knee braces. As we read the opinion of the ALJ, the ALJ did not require use of safety belts other than when the employees were in a stationary position and when the crane was not in operation.

## II

Evers contends that the language of § 1926.28(a) is so broad and general that it had no notice of what conduct was required by the regulation in order to insure compliance with the law. Evers claims that enforcement of the civil penalty imposed by the Secretary would under these circumstances violate its Due Process right. This Circuit has recently held in *Diebold, Inc. v. Marshall*, 585 F.2d 1327, 1335–36 (6th Cir. 1978):

> Among the myriad applications of the due process clause is the fundamental principle that statutes and regulations which purport to govern conduct must give an adequate warning of what they command or forbid. In our jurisprudence, "because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d

222 (1972). The principle applies with special force to statutes which regulate in the area of First Amendment rights, but the due process requirement of fundamental fairness is hardly limited to that context. Even a regulation which governs purely economic or commercial activities, if its violation can engender penalties, must be so framed as to provide a constitutionally adequate warning to those whose activities are governed.

In determining the degree of specificity required, several conflicting policy considerations come into play. The Fifth Circuit in *B & B Insulation Inc. v. OSHRC*, 583 F.2d 1364, 1370–72 (5th Cir. 1978), outlined some of the factors favoring specificity in OSHA regulations:

> The purpose of the Act is preventive rather than compensatory. Achievement of its goal of reducing industrial accidents depends upon employer compliance through elimination of legislatively identified safety and health hazards by prescribed remedial measures. Preventive goals are obviously not advanced where broad standards are extended to encompass every situation which gives rise to an unlikely accident.

> The Act indicates that Congress thought specificity of standards desirable. In light of the Act's preventive purpose and the intended specificity of its standards, the employer whose activity is not yet addressed by a specific regulation and whose conduct conforms to the common practice of those similarly situated in his

these employees. No such charge was made in either the Citation or in the Complaint. Charges of failing to provide safeguards for employees exposed to a falling hazard of more than 25 feet is governed by a specific regulation, § 1926.105, different than the regulation which Evers was charged with violating. It is not appropriate for an ALJ to apply standards which are not charged by the citation where the employer does not have an opportunity to argue the applicability of that regulation. Further, there is no evidentiary support for the assumption that a fall of more than 25 feet was involved. Stanley Cohen, the engineer who designed the building for Warren Brothers tes-

tified that the highest point on the structural frame was only 23 feet, 11 inches above the foundation. (App. 70a and 80a). There was no evidence that the foundation was above ground level. After assuming a fall of more than 25 feet was involved, the ALJ went on to use the regulation applying to that height, § 1926.105, to invoke a regulatory presumption that exposure of falls from that height was a hazard recognized in the industry which mandated use of some forms of protective equipment. Since the facts upon which the assumptions were made were not proven, the whole line of reasoning must fail.

industry should not generally bear an extra burden.

Where the Government seeks to encourage a higher standard of safety performance from the industry than customary industry practices exhibit, the proper recourse is to the standard-making machinery provided in the Act, selective enforcement of general standards being inappropriate to achieve such a purpose. The use of standard-making procedures assures that not only would employers be apprised of the conduct required of them and responsibility for upgrading the safety of the industry would be borne equally by all its members, but the resulting standard would benefit from input of the industry's experts, both employer and employee, cost and technology obstacles faced by the industry could be weighed, and more interested parties can participate in the process. (footnotes deleted)

On the other hand, the Secretary persuasively argues that specific regulations cannot begin to cover all of the infinite variety of hazardous conditions which employees must face. By requiring regulations to be too specific we would be opening up large loopholes allowing conduct which should be regulated to escape regulation. Nor do we feel that the employees of an industry which fails to take reasonable precautions for economic reasons should remain totally unprotected by the general duty regulations. We do not wish to provide an encouragement for industries to negligently fail to provide reasonable and feasible safety equipment for its employees where they face known hazards.

Turning our attention to prior interpretations of § 1926.28(a) we find that this regulation has a checkered history which offers more support to the petitioner's vagueness challenge than to any one interpretation of the regulation. The original language of the regulation read:

> The employer is responsible for requiring the wearing of appropriate personal protective equipment in all operations where there is an exposure to hazardous conditions *and* where this part indicates the need for using such equipment to reduce the hazards to employees. (emphasis added)

When the three-member Review Commission was faced with interpreting this broad language, it split three ways.[4] Commissioners Cleary and Van Namee upheld the regulation against a vagueness challenge over a strong dissent by Commissioner Moran. However, Commissioner Van Namee felt that the regulation only applied where the standard of conduct required of the industry could be found by reference to other more specific regulations. In *Carpenter Rigging & Contracting Corporation*, 2 BNA OSHC 1544 (Feb. 4, 1975), Commissioner Van Namee found that the requirement to use safety belts for heights of between 16 and 25 feet was implicit in other regulations which he cites in his opinion. Commissioner Cleary consistently took the position that the word "and" should be interpreted as meaning "as well as" and thus he would apply the regulation wherever employees are exposed to conditions which a reasonable person familiar with the industry would regard to be hazardous. On December 16, 1972, the regulation was modified to its present version by substitution of the word "or" for the word "and." This change in language was declared to be non-substantive and the procedures required for making a substantive amendment to the regulations were not followed.[5] This was the

---

4. *See, Hoffman Construction Company*, 2 BNA OSHC 1523 (Jan. 31, 1975); and *Carpenter Rigging & Contracting Corporation*, 2 BNA OSHC 1544 (Feb. 4, 1975). *See also, Eichleay Corp.*, CCH, 1974–1975 OSHD, para. 19,324 (Feb. 20, 1975).

5. *Isseks Brothers Inc.*, 3 BNA OSHC 1964 (Jan. 29, 1976). *Eichleay Corporation*, 2 BNA OSHC 1639 (Oct. 16, 1973). Evers did not attack the validity of the regulation on this ground below therefore we need not consider the validity of the amendment. We accept at face value the Secretary's assertion that the amendment was non-substantive.

state of the law existing as of the time the violation was found and the citation was issued.

Subsequent to the finding of a violation and the issuance of the citation in this case, the Ninth Circuit reversed the Commissioner's decision in *Hoffman Construction Company, supra,* and declared the regulation (the old version) to be unenforceably vague. *Hoffman Construction Company v. OSHRC,* 546 F.2d 281 (1976). The court expressly reserved comment on the amended version of the regulation. The Review Commission declined to follow *Hoffman,* but despite a change in the membership of the Commission, and the change in the language of the regulation, the Commissioners remained unable to agree on the scope of the regulation.[6] Commissioner Barnako, who replaced Commissioner Van Namee, felt that § 1926.28(a) could only be enforced where the standard of employer conduct which the regulation requires could be objectively determined from some extrinsic source such as industry custom or other, more specific regulations. In 1979, another change in Commission membership finally opened the way to a majority position on the interpretation of § 1926.28(a) for the first time since its promulgation. A majority of the Commission now interprets the regulation as requiring the Secretary to prove only that employees were exposed to conditions which a reasonable person would recognize to be hazardous and that this hazard could have been reduced by use of safety equipment which must be specifically identified by the Secretary. Prior cases holding that the Secretary also had the burden of proving the feasibility of the use of such safety equipment were overruled and the burden of proof on this question was shifted to the employer. *S & H Riggers & Erectors, Inc.,* OSHRC Docket No. 15855 (April 13, 1979).

Several Circuit Courts have considered the interpretation of § 1926.28(a). With the exception of *Hoffman, supra,* in every case the validity of the regulation has been upheld after the courts have carefully limited the scope of the regulation. In *B & B Insulation, supra,* the Fifth Circuit defined § 1926.28(a) as requiring that employers conform to industry standards or custom. Other Circuits have viewed this limitation as a more restrictive reading than Due Process considerations require. These Circuits have read this and similar regulations as applying only where "a reasonably prudent employer familiar with steel erection would have protected against the hazard of falling by the means specified in the citation." *Bristol Steel & Iron Works v. OSHRC,* 601 F.2d 717, 723 (4th Cir. 1979). *See also, Cape & Vineyard Div. v. OSHRC,* 512 F.2d 1148, 1152 (1st Cir. 1975); *General Dynamics v. OSHRC,* 599 F.2d 453, 464 (1st Cir. 1979); *American Airlines, Inc. v. Sec'y of Labor,* 578 F.2d 38 (2nd Cir. 1978); *Cotter & Company v. OSHRC,* 598 F.2d 911, 912 (5th Cir. 1979); and *Brennan v. Smoke-Craft, Inc.,* 530 F.2d 843, 845 (9th Cir. 1976). We hold that § 1926.28(a) requires an employer to require the wearing of appropriate safety equipment by his employees whenever a reasonably prudent employer, concerned with the safety of his employees, would recognize the existence of a hazardous condition and protect against that hazard by the means specified in the citation. This holding is consistent with our decision in *Schriber Sheet Metal & Roofers, Inc. v. OSHRC,* 597 F.2d 78 (6th Cir. 1979), adopting a similar test for compliance with the general duty clause (section 5(a)(1) of the Act).

We further hold that Due Process does not forbid the application of this stan-

---

6. *See, Isseks Brothers, Inc.,* 3 BNA OSHC 1964 (Jan. 29, 1976); *Sweetman Construction Company,* 3 BNA OSHC 2056 (Mar. 2, 1976); *Warnel Corp.,* CCH, 1975–1976 OSHD para. 20,576 (Mar. 31, 1976); *Frank Briscoe Co., Inc.,* CCH, 1976–1977 OSHD para. 21,162 (Oct. 4, 1976); *B*

*& B Insulation, Inc.,* CCH, 1976–1977 OSHD, para. 21,747 (Apr. 18, 1977); *Schiavone Construction Co.,* 5 BNA OSHC 1385 (1977); *State Home Improvement Co.,* 6 BNA OSHC 1249 (Dec. 20, 1977); and *Lehr Construction Co.,* 6 BNA OSHC 1352 (Feb. 2, 1978).

dard under its limiting construction to Evers. Since the regulation which Evers is charged with violating is not a criminal provision and does not regulate First Amendment activities, the regulation's validity may be considered "in the light of the conduct to which it is applied." *United States v. National Dairy Corp.*, 372 U.S. 29, 36, 83 S.Ct. 594, 600, 9 L.Ed.2d 561 (1963). *B & B Insulation, Inc. v. OSHRC*, 583 F.2d 1364, 1368 (5th Cir. 1978). *Jensen Construction Co. v. OSHRC*, 597 F.2d 246, 248 (10th Cir. 1979). In *National Industrial Constructors, Inc. v. OSHRC*, 583 F.2d 1048, 1054 (8th Cir. 1978), the Eighth Circuit said:

> In determining whether an administrative regulation provides adequate notice, courts have inquired whether an employer familiar with the circumstances of the industry could reasonably be expected to have had adequate warning of the conduct required by the regulation.

Applying this standard to the facts of this case we note that under our interpretation of the regulation the employer is only required to do that which it would be negligent for it not to do. Prior to the citation, two Circuits had applied a general reasonableness test to other similar provisions in the regulations. *Cape & Vineyard, supra,* and *Ryder Truck Lines v. Brennan*, 497 F.2d 230 (5th Cir. 1974). Thus the imposition of a similar standard with respect to § 1926.28(a) was not even at that time a novel concept. Finally, and most persuasively, a majority of the Commissioners in *Carpenter Rigging & Contracting Corporation, supra,* had already interpreted § 1926.28(a) to apply under circumstances virtually identical with those in this case (although as noted above the Commissioners could not agree upon the rationale for this holding).

### III

■ Although we have upheld § 1926.-28(a) against the employer's vagueness challenge and have found that the employer had adequate notice of its duties under this regulation, we cannot affirm the decision of the Review Commission as substantial evidence is lacking with respect to key elements of the charge of a § 1926.28(a) violation. By incorporating a reasonableness test as an element of proving a violation of § 1926.28(a) we do not mean to imply that reasonableness can be defined as whatever requirement the ALJ and two Commissioners agree should have been incorporated into § 1926.28(a) if they were drafting the regulation. Reasonableness is an objective test which must be determined on the basis of evidence in the record. Industry standards and customs are not entirely determinative of reasonableness because there may be instances where a whole industry has been negligent in providing safety equipment for its employees. However, such negligence on the part of a whole industry cannot be lightly presumed. *Diebold Inc. v. Marshall*, 585 F.2d 1327, 1336 (6th Cir. 1978). It must be proven.

■ While the undisputed evidence presented in this case that no employee had ever fallen while performing this type of work is not determinative as the Act is intended to prevent the first accident, neither can such evidence be totally ignored in determining the reasonableness of the employer's actions. Stanley Cohen, an engineer with 25 years in the field and the man who designed the building for Warren Brothers, testified that safety belts and lanyards are not required in this type of construction either by industry practice or by safety considerations. Moreover, he testified that the proposed means of protecting employees from falling were not feasible and would in fact subject employees to a greater hazard of falling because of their reduced mobility. He testified that he was not aware of anyone falling while performing this type of work. Ray Evers, president of the Company with 18 years of experience in erecting between 400 and 500 such buildings and who had observed other contractors erecting such buildings, testified that

his Company had a perfect safety record with respect to this type of work and that the safety measures required by the Secretary were not in accord with industry safety standards and not in his opinion necessary. The final witness for the employer was Ivan Chandler, the Business Agent for Ironworkers Local 44 and a former ironworker. Mr. Chandler testified that he was familiar with the type of erection work that was taking place when the inspection was made and that he had had an opportunity to observe the safety practices of a large number of employers in the industry. He testified that the practices for which Evers was cited were considered adequate by industry standards and that they were in fact safe for employees. Mr. Chandler also testified that the use of the protective equipment required by the Secretary was not feasible and would result in greater hazards to the employees.

The Secretary chose to rely solely on the testimony of the Compliance Officer who observed the alleged violations. The Compliance Officer had held that position for only three years. He had no special familiarity with the industry and his only educational background was in the field of history, although he did have some training as part of his position of Compliance Officer. He did not qualify as an expert. His naked opinion that the use of safety belts was necessary and feasible was an opinion that he was not qualified to make and was not supported by any calculations of the structural strength of the purlins or other objective evidence.

█ The Secretary claims that the burden of proving infeasibility of the safety precautions required by the Secretary rests with the employer. This Circuit has previously ruled that when the regulation or statute specifies the protective equipment which must be used, then the employer has the burden of showing that the regulation cannot be complied with. However we have also held that when the regulation does not specify the means of compliance,

then the burden of proving feasibility rests upon the Secretary. *Diebold Inc. v. Marshall*, 585 F.2d 1327, 1333 (6th Cir. 1978); and *Schriber Sheet Metal & Roofers Inc. v. OSHRC*, 597 F.2d 78, 79 (6th Cir. 1979). *See also, Bristol Steel & Iron Works v. OSHRC*, 601 F.2d 717, 723–24 (4th Cir. 1979); and *National Realty & Construction Co. v. OSHRC*, 489 F.2d 1257, 1268 (D.C.Cir. 1973).

While we are inclined to agree with the ALJ's assumption that the employer might have been able to do something more to protect its employees from the risk of falling, neither this court nor the Secretary can base affirmance of a civil penalty on anything less than substantial evidence which does not exist in the present case. Accordingly, the petition for review is granted, the decision of the Commission is reversed, its order vacated and its citation is dismissed.

EDWARDS, Chief Judge, dissenting.

This is a case which presents an important problem in the construction industry. Petitioner Ray Evers Welding was engaged in erecting a one-story warehouse of light steel framing with a sheet metal skin covering. The overhead framing consists of high beam girders. Connected to them at right angles are metal stampings called "purlins." The purlins must be bolted to the girders for the structure to stand by itself and in this process, ironworkers must go on top of the girders which will support the roof to accomplish the bolting.

An OSHA inspection documented by 15 exhibits of pictures of the operation showed that Evers' employees were walking on top of the roof girders and bolting purlins without any protective devices such as safety belts tied by a lanyard to the girders or protective nets below. On this basis, the Occupational Safety and Health Review Commission cited Evers for a "serious" violation of the Occupational Safety and Health Act, 29 U.S.C. § 651 *et seq.* (1976), § 654(a)(2) of which provides:

## § 654. Duties of employers and employees

(a) Each employer—

(2) shall comply with occupational safety and health standards promulgated under this chapter.

The applicable rule is cited as 29 C.F.R. § 1926.28(a) and it provides:

### Personal protective equipment

(a) The employer is responsible for requiring the wearing of appropriate personal protective equipment in all operations where there is an exposure to hazardous conditions or where this part indicates the need for using such equipment to reduce the hazards to employees.

The citation in this case reads:

Failure to require the wearing of appropriate personal protective equipment in all operations where there is an exposure to hazardous conditions or where this part indicates the need for using such equipment to reduce the hazards to employees, e. g. Employees observed on the beams of the building not protected by personal protective equipment such as a safety belt and lanyard from a fall of 18–21 feet on the east side of the building.

A hearing on this citation was held before an Administrative Law Judge after a complaint was issued by the Secretary of Labor and a decision finding a serious violation, and penalizing Evers by a $200 fine, was entered. Upon review, the Commission affirmed the Administrative Law Judge.

Evers petitioned for review in this court under 29 U.S.C. § 660(a). The issue that is presented for decision here is as follows: "Is there substantial evidence to support the Commission's finding that Evers seriously violated the OSHA standard in its failure to require the use of safety belts or harnesses of its employees when exposed to the danger of falling?" Contrary to the opinion for the court, I would answer this question "yes."

In its petition for review, Evers claims that the regulation quoted above, 29 C.F.R. § 1926.28(a), is unenforceably vague. Evers' testimony before the ALJ had been that the wearing of safety belts for this sort of job was not a usual practice and that the job did not present a recognized hazard in the trade, asserting that no man had been known to fall from such a building. Evers also claims that recognized industry standards concerning safety belts should be the standards by which its operations are to be judged.

The general duty clause of the Act, however, says, "Each employer . . . shall furnish to each of his employees employment and a place of employment which are free from recognized hazards . . . ." 29 U.S.C. § 654(a)(1) (1976).

The cases in this regard are definitely divided as to how the statute and regulations should be interpreted. The First Circuit in *General Dynamics Corp. v. OSHA Review Comm'n.*, 599 F.2d 435 (1st Cir. 1979), supported the view taken by the Commission in this case. A similar opinion is *Secretary v. S & H Riggers and Erectors, Inc.*, OSHRC # 15855, 3 CCH ESHG ¶ 23,-480 (Rev.Comm.1979). In a very recent opinion written by Judge Johnson for the Fifth Circuit, that court has dealt with exactly the same issue: employees of an outdoor advertising sign company working on catwalks as well as ladders more than 20 feet above ground. In affirming the Administrative Law Judge, the court stated:

. . . The administrative law judge found Turner to be in serious violation of 29 C.F.R. § 1926.28(a) for failure to require its employees to wear and use their safety belts while working at high elevations. The record in this case substantially supports that finding. The compliance officer testified that he observed men working on the sign without tying off their safety belt lanyards. This action was known by the lead crewman, who had responsibility for assuring compliance with the company's policy that employees

should tie off when working at heights above four feet.

*Turner Communications Corp. v. OSHA Review Comm'n.*, 612 F.2d 941, at 944 (5th Cir. 1980).

Contrary views have been expressed in *Bristol Steel & Iron Works, Inc. v. OSHA Review Comm'n.*, 601 F.2d 717 (4th Cir. 1979), and *Hoffman Construction Co. v. OSHA Review Comm'n.*, 546 F.2d 281 (9th Cir. 1976).

I agree with the opinion of the court in upholding the applicable regulation, 29 C.F.R. § 1926.28(a), as to petitioner's vagueness and notice challenges. I disagree strongly with it in its conclusion that the ALJ and the Commission's findings of violation were not supported by "substantial evidence."

The undisputed evidence was that the center beam of this building was 23 feet 11 inches above ground level. The undisputed evidence also was that Evers workers on this job repeatedly walked this center beam to the position where they were required to do the bolting. It also was that they never wore belts with safety lanyards attached either when walking or bolting and that no safety nets were employed.

The pictures below are, in themselves, "substantial evidence" to support the Commission's finding and $200 fine.

C-8

C-9

If the risk involved in falling from high steel construction jobs is not a "recognized hazard," the English language has been twisted beyond recognition. On this issue, the Commission found:

This requires three facts to be found in conjunction, the hazard, the exposure, and the equipment of an appropriate nature to reduce the hazard to the worker. Examining the evidence in this case . . beginning with the hazard, it is apparent that common sense and official notice are enough to recognize the hazard of falling from elevated worksites. Reinforcing the finding that there was a hazard in the undertaking as viewed at respondent's worksite are these facts. The men pictured in C Exhibits 4, 6 and 7 are near the top of the structure and the man in C Exhibit 9 is standing on the peak.

There may, of course, be a serious argument that for high steel workers to wear belts and lanyards or never go on high steel without life nets rigged below would be extremely costly. If so, the cost argument must be addressed to the Commission or to Congress and not to this court.

The opinion for the court does not (at least in so many words) accept petitioner's argument that the Commission's findings should be reversed because the hazards it found were not hazards "recognized by the industry."

In this respect, I would follow the position taken by the First Circuit in *General Dynamics Corp. v. OSHA Review Comm'n.*, 599 F.2d 453, 464 (1st Cir. 1979):

Furthermore, we cannot agree with Quincy's position that the measure of the adequacy of its safety program should be that of the industry. Such a standard would allow an entire industry to avoid

liability by maintaining inadequate safety training. The purpose of the Act is to require all employers to take all feasible steps to avoid industrial accidents. While the definition of a "recognized hazard" should be made in reference to industry knowledge, by virtue of the definition of the word "recognized", we cannot accept a standard for the precautions which should be taken against such a hazard which is any less than the maximum feasible. *Brennan v. Butler Lime and Cement Co., supra* [560 F.2d 1011]; *National Realty and Construction, supra* [*Nat'l Realty and Construction Co. v. OSHRC,* 489 F.2d 1257]. (Footnote omitted.)

599 F.2d at 464.

The petition for review should be dismissed.