785 F.2d 308
 12 O.S.H. Cas.(BNA) 1784
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
HAMILTON DIE CAST, INC., Petitioner,
v.
OCCUPATIONAL SAFETY & HEALTH REVIEW COMMISSION, et al., Respondents.
 84-3664
 United States Court of Appeals, Sixth Circuit.
 1/24/86
 
 Before: MERRITT, JONES, and NELSON, Circuit Judges.
 PER CURIAM.
 
 
 1
 Petitioner, Hamilton Die Cast, Inc. (Hamilton), seeks review by this court of a decision by the Occupational Safety and Health Review Commission. The Commission adopted a portion of a decision and order of an Administrative Law Judge determining that Hamilton had committed serious violations of 29 C.F.R. Sec. 1910.133(a)(1)[1] by not requiring its die cast operators to use full face shields while ladling molten aluminum from furnaces and while placing scrap aluminum and ingots into the furnaces. Hamilton attacks this determination on the grounds that: (1) industry practice and custom do not require that die cast operators wear full face shields; (2) there is not substantial evidence to support a finding that Hamilton had knowledge of a hazard; and (3) the Administrative Law Judge improperly denied Hamilton's motion to compel production of documents relating to OSHA citations of die casting foundries in Ohio in the years 1975, 1976, 1977, and 1978.
 
 
 2
 We are remanding the case for further agency consideration.
 
 
 3
 Hamilton uses cold chamber die casting machines to produce aluminum castings of various shapes and forms. The operators of the machines, as the Administrative Law Judge found, 'regularly ladle molten aluminum from furnaces located four or five feet from and adjacent to the die cast machines. The aluminum is heated to a temperature of approximately 1,140 F. * * * The machine operators also place aluminum bars or ingots and scrap aluminum into the furnaces adjacent to their machines.'
 
 
 4
 The hazard at issue here involves the spewing, eruption or 'spitting' of molten aluminum in the direction of employees. For protection against this hazard the operators wear helmets and safety glasses with side shields. They also have full face shields that are attached to their helmets and that can be lifted up or down like the visors worn by medieval knights in armor.
 
 
 5
 Hamilton's plant was inspected by agency personnel in January of 1979, and the inspectors found at that time that all but one of the operators were working with the shields positioned away from their faces. According to the agency, '[t]he employees are reluctant to wear the face shields because of the discomfort and reduced visibility which results from dirt settling into the wire mesh.' Respondent's brief at 3-4. There were no facilities readily available for cleaning the wire mesh screens, and replacement screens were kept in an inconvenient location at some remove from the shop floor. The local union had filed a grievance against any requirement that face shields be worn by die cast operators, it being the view of at least one operator that a greater hazard would be presented by wearing the shields than by not wearing them.
 
 
 6
 Injury reports show that several die cast operators were injured in the head or neck while ladling or while adding aluminum to the furnace. Some of these reports are sobering indeed. One James Bowling missed 34 workdays after burning his left eye and his 'right side.' Steve Napier burned his head and face and apparently missed 21 workdays. Another man was out for one day due to burns on his neck and back. Another was out for two days with foreign particles (from a 'spray of molten metal') in his right eye. Two other reports show neck or head injuries of die cast operators from spraying metal, but these employees apparently missed no work. It is unclear which of these injuries would have been prevented by the use of face shields during ladling or furnace-charging operations.
 
 
 7
 General standards such as Sec. 1910.133(a)(1) are important to enforcement of the Occupational Health and Safety Act. It is impossible for OSHA to pass a specific regulation regarding every minute detail of occupational life. These general regulations provide at least a minimum level of protection for employees in areas where a specific regulation has not been promulgated. See Diebold, Inc. v. Marshall, 585 F.2d 1327, 1336 (6th Cir. 1978). Hamilton argues that such a standard should be deemed to require 'only those protective measures which the employers' industry would deem appropriate under the circumstances,' unless 'the employer has actual knowledge that a hazard requires the use of some other or additional personal protective equipment.' Florida Machine and Foundry, Inc. v. OSHRC, 693 F.2d 119, 120 (11th Cir. 1982).
 
 
 8
 This Circuit has held that while general duty regulations are to be interpreted and applied in the light of industry practice, such practice is not invariably dispositive of their meaning. See Ray Evers Welding Co. v. OSHRC, 625 F.2d 726 (6th Cir. 1980), where, in upholding a general regulation against a vagueness challenge, the court said:
 
 
 9
 'We hold that Sec. 1926.28(a) requires an employer to require the wearing of appropriate safety equipment by his employees whenever a reasonably prudent employer, concerned with the safety of his employees, would recognize the existence of a hazardous condition and protect against that hazard by the means specified in the citation. This holding is consistent with our decision in Schriber Sheet Metal & Roofers, Inc. v. OSHRC, 597 F.2d 78 (6th Cir. 1979), adopting a similar test for compliance with the general duty clause (section 5(a)(1) of the Act).'
 
 
 10
 Ray Evers Welding, 625 F.2d at 731.
 
 The court went on to say:
 
 11
 'By incorporating a reasonableness test as an element of proving a violation of Sec. 1926.28(a) we do not mean to imply that reasonableness can be defined as whatever requirement the ALJ and two Commissioners agree should have been incorporated into Sec. 1926.28(a) if they were drafting the regulation. Reasonableness is an objective test which must be determined on the basis of evidence in the record. Industry standards and customs are not entirely determinative of reasonableness because there may be instances where a whole industry has been negligent in providing safety equipment for its employees. However, such negligence on the part of a whole industry cannot be lightly presumed. Diebold Inc. v. Marshall, 585 F.2d 1327 (6th Cir. 1978). It must be proven.'
 
 
 12
 Ray Evers Welding, 625 F.2d at 732.
 
 
 13
 In the case at bar we do not believe the agency gave adequate consideration to industry custom in determining that 29 C.F.R. Sec. 1910.133(a)(1) required that full face shields be worn by Hamilton's die cast operators. While industry custom is not wholly determinative of reasonableness, it is a major factor that should not be ignored. Usually, an industry does things in a particular way for good reasons--among which may be a desire to promote worker safety. This court encountered indicia of that phenomenon in Ray Evers Welding. Part of the testimony which the agency overlooked in that case was that the use of safety belts might impair the mobility of the workers, thereby creating an even greater hazard of falling. Industry custom and practice is important not only because it may be the only notice an employer has of what is required, but also because it may provide the best evidence of what is reasonable.
 
 
 14
 In this case, the ALJ seems to have given short shrift to the views of workers who oppose the wearing of face shields. The workers complain about impaired visibility and, according to Hamilton's counsel at oral argument, have other complaints. The ALJ did not address the question of whether these problems would be alleviated if the face shields were regularly cleaned. We cannot tell, from the record before us, to what extent the use of full face masks would have prevented or ameliorated the injuries experienced by Hamilton's die cast operators in the past, and we do not have a reasoned analysis of the extent to which use of the masks would impair visibility, thereby increasing the risk of accidents. The experience of other foundries in Ohio would seem highly relevant here, yet Hamilton was not afforded access to agency records on enforcement actions against other Ohio die casting foundries. Such records could well have led to the discovery of admissible and important evidence, and we think the ALJ erred in denying Hamilton's motion for production.
 
 
 15
 Although we are dealing here with what may be a dangerous situation, we are not satisfied that the reasonableness of Hamilton's conduct has been adequately evaluated. Accordingly we VACATE the finding that Hamilton violated 29 C.F.R. Sec. 1910.133(a)(1) by not requiring its die cast operators to wear full face shields, and we REMAND for such further proceedings as the agency may consider appropriate in the light of this opinion.
 
 
 
 [1]
 (a) General. (1) Protective eye and face equipment shall be required where there is a reasonable probability of injury that can be prevented by such equipment. In such cases, employers shall make conveniently available a type of protector suitable for the work to be performed, and employees shall use such protectors. No unprotected person shall knowingly be subjected to a hazardous environmental condition. Suitable eye protectors shall be provided where machines or operations present the hazard of flying objects, glare, liquids, injurious radiation, or a combination of these hazards. 29 C.F.R. Sec. 1910.133(a)(1) (1985)