983 F.2d 1067
 61 USLW 2436, 15 O.S.H. Cas. (BNA) 2025,
15 O.S.H. Cas. (BNA) 2199,
1993 O.S.H.D. (CCH) P 29,922
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Lynn MARTIN, Petitioner,
v.
MIAMI INDUSTRIES, INC.; and The Occupational Safety &
Health Review Commission, Respondents.
 No. 91-4045.
 United States Court of Appeals, Sixth Circuit.
 Dec. 22, 1992.
Order Amending Opinion Feb. 11, 1993.
 
 Before KENNEDY and MILBURN, Circuit Judges, and WELLFORD, Senior Circuit Judge.
 PER CURIAM.
 
 I. BACKGROUND
 
 1
 Miami Industries, Inc. (Miami) manufactures welded steel tubing from coils of flat steel, and its manufacturing process, utilizing large rollers, exposes its employees to moving parts of the machinery. The Occupational Safety and Health Review Commission (OSHA) has cited Miami for alleged safety violations in respect to the roller operation, particularly the cleaning process. The quality of the steel product depends upon whether the steel is smooth without any grooves. In order to accomplish this quality, Miami maintains that its employees must "regularly and frequently remove small bits of metal and other debris, known as 'pickups,' from the rollers." To remove the "pickups," the employee must place his hand in the machinery while it is operating to rub the pickup off the roller.[1] This removal process exposes the employees to the hazard of injury.[2]
 
 
 2
 In 1978, Miami Industries was inspected by OSHA compliance officer Charles Barrett. OSHA cited the company for failure to guard the ingoing nip points and rotating parts at the "forming rolls and guide rolls" all along the tube mill as required by 29 C.F.R. § 1910.212(a)(1). Miami never contested this citation but instead began working to abate or correct the violation.
 
 
 3
 Ronald Fox, Miami's industrial relations manager, testified that Barrett was concerned with an employee's slipping near the operating tube mill and being injured as a result.[3] Barrett also gave Miami the names of four other companies which purportedly had guards in place that complied with the OSHA standards. Fox contacted two of these companies and testified that neither had any guard in place.
 
 
 4
 Miami devised a guard which was designed to prevent a passerby's injury but enabled the employee to remove any pickups from the rollers without stopping the machine.[4] Compliance Officer Barrett did not thereafter inspect the plant, but he allegedly indicated that Miami was in compliance, requesting the blue prints of the newly designed guards to share with other companies in comparable situations. The director of OSHA for the Cincinnati area did extend the time for which Miami might abate the violation, stating:
 
 
 5
 Please note that if you use movable barrier guards, they must be either secured by fasteners that are not readily removable, or they must be used in conjunction with electrically interlocked devices. Electrically interlocked devices must be installed so that when a barrier guard is removed or opened, the machine will shut down.
 
 
 6
 Fox believed the newly designed guards met the letter standards and therefore believed that Miami was in compliance with the OSHA standards.
 
 
 7
 Between the Barrett inspection and the present contested citation dated issued some ten years later, OSHA conducted seven inspections of the Miami plant. It did not cite Miami for any problems with the guards designed and installed to vitiate the 1978 violation. The Secretary maintains that five of the seven inspections were conducted by health hazard compliance officers who are not concerned with machinery hazards.
 
 
 8
 In January of 1988, compliance officer Dennis Collins inspected the Miami plant to investigate a complaint that employees were required to reach over the existing guards to remove the pickups. Collins noticed not only that no guard was in place at the first set of rollers, but also that other guards were partially removed and not properly secured. Immediately after this latter inspection, a Miami employee secured the guards in place.
 
 
 9
 Collins[5] cited Miami for not providing guards "to protect operators and other employees from hazards created by inrunning nip points". Collins claimed the guards designed by Miami were inadequate because they could be easily opened.
 
 II. ADMINISTRATIVE RULING
 
 10
 The ALJ ruled that Miami had violated 29 C.F.R. 1910.212(a)(1). The Commission reversed and vacated the portion of the citation that charged that Miami should have installed an interlocked guard to protect its employees during the process of removing the pickups, holding that the hinged guards "were sufficient to protect employees except during maintenance operation, when employees lowered the guard in order to have access to the rollers for cleaning purposes." The Commission concluded that
 
 
 11
 OSHA's enforcement actions deprived Miami of fair notice that OSHA considered its existing guarding device to be inadequate and further find that, under the circumstances of this case, the Secretary is estopped from enforcing the citation to the extent the citation alleges that the hinged panel guards were not capable of protecting the employees.
 
 
 12
 The Commission barred OSHA from further enforcement without first conducting a hearing which is similar to the Secretary's granting of a permanent variance.
 
 III. STANDARD OF REVIEW
 
 13
 We now review the decision of the Occupational Safety and Health Review Commission, which "is entitled to great deference in its reasonable interpretations of regulations promulgated under the Act." Diebold, Inc. v. Marshall, 585 F.2d 1327 (6th Cir.1978). Title 29 U.S.C., § 660, provides "[t]he findings of the Commission with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, shall be conclusive." We have defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Jones v. Priebe, 489 F.2d 709, 710 (6th Cir.1973) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Any "adjudicatory conclusions of the Commission can be set aside only when they are found to be 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' " Empire-Detroit Steel v. Occupational Safety Health Review Comm'n, 579 F.2d 378 (6th Cir.1978) (citing 5 U.S.C. § 706(2)(A)).
 
 IV. FAIR NOTICE
 
 14
 Section 1919.212(a)(1) applies generally to different machines in order to protect the operator from the general point of operation hazards.[6] This particular regulation does not proscribe the precise means of compliance. We have held that when the regulation does not specify the means of compliance then the Secretary has the burden to prove the feasibility of compliance. Ray Evers Welding v. Occupational Safety and Health Review Comm'n, 625 F.2d 726 (6th Cir.1980); see also Diebold, Inc., 585 F.2d at 1333.
 
 
 15
 The Secretary argues that the first compliance officer's statements and actions should not have been a basis of reliance by Miami because it could not reasonably believe that Barrett had approved the guards in question by words or actions. The Commission rejected both of these arguments.
 
 
 16
 "[G]enerality is a necessary by-product of the broad scope of the subject matter and the nearly infinite variety of machines which might pose hazards." Diebold, Inc., 585 F.2d at 1336. In Diebold, we were faced with whether the statute applied, if at all, to the machine in question and, if so, whether the company had adequate notice of such standard. We held that inartful drafting was just one of several factors to be considered in a case of this kind. The other factors include "common understanding and commercial practice," and "confirmation of industry practice by the pattern of administrative enforcement." Id.
 
 
 17
 These factors weigh in favor of Miami. Fox contacted two companies suggested by Barrett and neither used guards. Furthermore, OSHA had inspected Miami on other occasions and did not cite Miami for the alleged violation now in controversy. While the Commission is not bound by the representations or the interpretations of a compliance officer as to compliance with the act, it is clear that compliance officers disagreed as to the effect of Miami's actions. L.R. Willson & Sons, Inc. v. Donovan, 685 F.2d 664, 676 (D.C.Cir.1982). The representations of Barrett "are relevant in a particular case to whether an employer has adequate notice of what is required under the Act." Id. Collins had no experience in this particular type of industrial setting. The question in this case, then, it is whether Miami had fair notice of the alleged violation under the circumstances.
 
 
 18
 The Commission relied on Secretary of Labor v. Hamilton Die Cast, Inc, 11 O.S.H. Cas. (BNA) 2169 (1984), and the Secretary argues that it is distinguishable. Hamilton Die Cast was cited in 1979 for violation of the same regulation at issue in this case because guards were not in place to protect employees from spraying molten aluminum. Previously, there had been a citation for the same violation. In 1977 at the time of the first citation, the compliance officers met with the company officials to work an agreement on how best to comply with OSHA standards. The compliance officers agreed that during a certain key process, the guard could be removed and placed to the side. The company challenged the subsequent citation for the same offense claiming it did not have fair notice. The Commission agreed and vacated the citation.
 
 The Commission concluded:
 
 19
 In view of the general nature of the cited standard and the lack of any express language specifically addressing die casting machines, HDC [the company] cannot reasonably be said to have been on notice of a requirement to guard during core pull operations once the Secretary had informed HDC that guarding was not needed at such times.
 
 
 20
 Id. at____ In making the Hamilton Die Cast decision, the Commission relied on Diebold and Willson, both of which remain solid precedents.
 
 
 21
 We are satisfied that the Commission properly relied on Hamilton as a comparable case to the instant dispute. We find that there is substantial evidence that Miami was deprived of fair notice that its hinged guards were inadequate under § 1910.212(a)(1).
 
 
 22
 We will accordingly AFFIRM the Commission's holding that Miami was not given fair notice.
 
 V. ESTOPPEL
 
 23
 The Secretary contests the Commission's additional finding that equitable estoppel prevented OSHA from pursuing Miami for the alleged OSHA violations. The Commission held that Miami reasonably relied on the statements and actions of OSHA personnel with respect to the 1978 citation and concluded that Barrett, in essence, approved the newly designed guard. Such action in combination with the failure of later OSHA inspections to alert Miami to the guard problems constituted affirmative misconduct in the Commission's view.
 
 
 24
 Equitable estoppel, however, is generally not available against the government. Housing Authority of Elliot County v. Bergland, 749 F.2d 1184, 1190 (6th Cir.1984). An oral representation, or even an understanding about the adequacy of the guard, is not enough to satisfy the affirmative misconduct required to constitute estoppel against the government. See Heckler v. Community Health Serv. of Crawford County, Inc., 467 U.S. 51 (1984). We, therefore, do not adopt the Commission's conclusion that the Secretary was estopped in this case.
 
 
 25
 It follows, therefore, that the Commission's holding that the Secretary had granted Miami a variance based upon a finding of estoppel is set aside as erroneous.
 
 
 26
 We hold that Miami did not receive fair notice of the citation that it violated § 1910.212(a)(1) and that the penalty asserted against it for the asserted violation must be set aside. We accordingly VACATE the order of the Secretary for the reasons herein indicated.
 
 
 27
 Order Amending Opinion.
 
 
 28
 Feb. 11, 1993.
 
 
 29
 There has been a motion to clarify a part of the final paragraph of the court's final opinion, filed December 22, 1992. Both parties have now indicated agreement that "the logical results of the Court's fair notice holding should simply be a vacation of the citation." (The Secretary's citation #101415644, issued to Miami Industries, issued January 19, 1988). See Diebold, Inc. v. Marshall, 585 F.2d 1327, 1339 (6th Cir. 1978).
 
 
 30
 We agree with the parties' suggestion in this respect. Accordingly, the last sentence of our prior opinion is hereby amended and the following is substituted in its stead:
 
 
 31
 We accordingly VACATE the order of the Secretary for the reasons herein indicated.
 
 
 32
 The mandate will issue promptly.
 
 
 
 [1]
 This process may occur 50 times a day. The commission noted that "[t]here is no dispute that this essential maintenance procedure can only be conducted effectively and efficiently when the rollers are operating."
 
 
 [2]
 Only one employee has been injured performing this process and Miami notes that a violation of company policy brought about this injury
 
 
 [3]
 Barrett, was not called to testify by the Secretary, and, therefore, any evidence of the 1978 citation and negotiations was recounted by Fox and was ruled admissible by the ALJ and affirmed by the commission as hearsay statements admissible to show Miami's reactions to the statements and actions and not for the truth of the matter asserted
 
 
 [4]
 The guards were hinged so that they could be swung open to allow access to the rollers to remove the pickups from the operating machine. The guards were placed behind the first set of rollers, thus exposing employees at this location. Miami does not contest the 1988 citation for those rollers
 
 
 [5]
 Officer Collins apparently had never seen a tube mill in his sixteen years of working at OSHA, neither had he observed a barrier guard at rollers of this type
 
 
 [6]
 Section 1910.212(a)(1) provides:
 (a) Machine guarding--(1) Types of guarding. One or more methods of machine guarding shall be provided to protect the operator and other employees in the machine area from hazards such as those created by point of operation, ingoing nip points, rotating parts, flying chips and sparks. Examples of guarding methods are--barrier guards, two-hand tripping devices, electronic safety devices, etc.