GORSUCH, J„
dissenting:
Administrative agencies enjoy remarkable powers in our legal order. Their interpretations of ambiguous statutes control even when most everyone thinks Congress really meant something else. Their regulations bind as long as they can make the modest boast that they haven’t behaved arbitrarily or capriciously. Their factual findings rule the day unless someone can show they have not just erred but clearly erred. Still, there remains one thing even federal administrative agencies cannot do. Even they cannot penalize private persons and companies without some evidence the law has been violated. Yet that’s what we’re being asked to countenance in this case and why I would grant the petition for review.
To sustain her charge that Compass violated 29 C.F.R. § 1926.21(b)(2), the Secretary concedes she bore an evidentiary burden. A burden of showing that reasonably prudent employers in the industry would have anticipated the sort of electrical hazard that trench hand Christopher Carder encountered in this case and provided him with more training about it than Compass did. See Compass Environmental, Inc., 23 BNA OSHC 1132, 2010 WL 2404289 at *2-3 (No. 06-1036, 2010). The Secretary concedes she bore this burden, no doubt, because the OSH Act and its accompanying regulations seek to prevent rather than compensate for injuries — and in doing so they admit that some accidents, though regrettable, are so unlikely even entirely reasonable employers wouldn’t anticipate or train for them. See, e.g., B & B Insulation, Inc. v. OSHRC, 583 F.2d 1364, 1371 (5th Cir.1978); Brennan v. OSHRC, 501 F.2d 1196, 1199-1200 (7th Cir.1974).
Though well aware of the burden she faced in this case, the Secretary — remarkably — failed to present any proof to satisfy it. The ALJ dismissed the citation against Compass for exactly this reason, explaining that
[i]n this case, Donnie Wren, a[n] experienced crane operator, failed to maintain 20 feet of clearance between the Komatsu [excavator] and the [overhead power lines], in contravention of his training and years of experience....
The record establishes [that] Compass ... trained its Komatsu operator in the hazards associated in moving the exea *1171 vator near [overhead electrical] lines....
[On the day of the accident,] [t]he Komatsu was digging 200 feet from the [overhead] power lines and was not expected to reach the area under the lines until the following week, at which time the lines were to have been removed. All the witnesses testified that ... [servicing [and fueling were] performed on the Komatsu in situ [at the trench where it operated, nowhere near the power lines]....
None of the witnesses could explain why Wren deviated from standard operating procedures by walking the Komatsu away from [its work site to the area with the power lines] on the day of the accident. The Secretary introduced no evidence establishing Compass should have foreseen [he] would do so, taking Carder with him.
Compass Environmental, Inc., No. 06-1036 at *5-6, 8 (OSHRC Jan. 22, 2008).
These are the sad facts of the case as it comes to us. The Secretary’s proof shows that the excavator operator defied years of training and experience — first by moving the excavator from the trench for refueling, and then by failing to maintain 20 feet of clearance from the overhead electrical lines when he did. The proof shows that a tragic accident ensued. But the proof is silent on the question whether reasonably prudent employers in the industry would have done more to anticipate or train a trench hand for the accident than Compass did. Before us, the Secretary asserts that a reasonable employer would have done more but in support of this assertion she offers no evidence.
And that should be more than enough to grant the petition for review. However little the “substantial evidence” standard of review requires of an agency, however forgiving the “arbitrary and capricious” formulation of the APA may be, this court’s role isn’t so utterly ineffectual as to require (or permit) us to affirm an agency decision that is (as the ALJ found) unsupported by any proof on the (concededly) dispositive legal question. The law requires the Secretary to produce evidence, not issue Delphic declarations, about the practices of reasonable employers in the field. See Ray Evers Welding Co. v. OSHRC, 625 F.2d 726, 732 (6th Cir.1980) (explaining that the reasonable employer standard doesn’t mean “whatever requirement the ALJ and two Commissioners agree” on but is “an objective test which must be determined on the basis of evidence in the record”). No doubt if the rule were otherwise — if the Secretary could cite companies for violations based on a mere assertion of unreasonableness— substantial constitutional due process and vagueness questions would quickly follow. See id. (rejecting vagueness and due process challenges to an OSHA regulation precisely and only because the reasonable employer standard guarantees that “an employer familiar with the circumstances of the industry ... [has] adequate warning of the conduct required by the regulation”).
Perhaps recognizing the problem, the Secretary notes that Compass trained other employees about the dangers of electricity lines. She says that Mr. Carder was hired after the construction project began and most everyone else was trained. She tells us that everyone else heard from Compass about electrical hazards. She concedes that Mr. Carder received training when he arrived late on the scene, but stresses that it’s unclear whether his training included the same information about electrical hazards everyone else heard. From all this, the Secretary asks us to assume that Compass at least violated its *1172 own internal policies by failing to warn Mr. Carder.
This can’t fill the evidentiary void either. Even if we were willing to assume with the Secretary that Compass violated its internal policies by failing to warn Mr. Carder about electrical hazards, that still wouldn’t prove it violated industry norms. By the Secretary’s admission, § 1926.21(b)(2) doesn’t punish companies for failing to adhere to their internal practices and customs. It punishes them for failing to act as reasonably prudent employers in the field do. And the fact remains that the Secretary presented no proof on that question.
Neither can we overcome the problem for the Secretary by presuming that Compass’s internal practices and industry practices are one and the same. Internal company rules may (and often do) go above and beyond industry standards. Companies, after all, compete for labor and business, and worker safety is one dimension on which that competition can and does occur. Holding a company liable for failing to follow its internal policies — without some proof from the Secretary suggesting that those policies are congruent with (not more protective than) industry norms— risks discouraging employers from adopting more protective plans and encouraging them instead to devolve to the lowest common denominator and the most minimal training regimes. A result, of course, that would undermine rather than advance worker safety and the law’s cause — and a point we have long recognized in analogous contexts. See generally Hinds v. Sprint/United Management, Co., 523 F.3d 1187, 1198-99 (10th Cir.2008) (holding in the employment discrimination context that “the mere failure of a company’s employees to follow their employer’s manuals ... without more, does nothing to suggest discrimination” and explaining that a contrary holding would risk “[dissuading employers from implementing programs or policies to prevent discrimination,” a result “directly contrary to the purposes underlying” the law) (quotation omitted).
For all these reasons, it comes as no surprise that the Secretary is unable to cite a single case from any other circuit holding a company liable under § 1926.21(b)(2) simply because it failed to follow an internal policy. In fact, every other circuit has recognized, as Justice (then Judge) Breyer once explained, that “a vaguely worded, open-ended regulation like [29 C.F.R. § 1926.28(a) ] ... must [ordinarily] be read to penalize only conduct unacceptable in light of the common understanding and experience of those working in the industry.” F.A. Gray, Inc. v. OSHRC, 785 F.2d 23, 25 (1st Cir.1986) (Breyer, J.) (quotations omitted) (emphasis added); see also Tri-State Roofing & Sheet Metal, Inc. v. OSHRC, 685 F.2d 878, 880 n. 1 (4th Cir.1982); B & B Insulation, 583 F.2d at 1370 (5th Circuit); Ray Evers Welding Co., 625 F.2d at 732 (6th Circuit); L.R. Willson & Sons, Inc. v. OSHRC, 698 F.2d 507, 514 (D.C.Cir.1983). We would do well to follow where our sibling circuits have led.
Of course, the Secretary directs us to Cape & Vineyard Div. v. OSHRC, 512 F.2d 1148, 1154 (1st Cir.1975). But, as it turns out, that case didn’t go nearly as far as the Secretary seeks to go in this one. Cape did not hold that a violation of internal company rules, without any other proof of industry practice, is enough. To the contrary, the First Circuit acknowledged merely that evidence about a company’s internal safety rules can usefully contribute to the project of obtaining an accurate picture of industry norms — a modest proposition no one disputes. Then, having said that, the First Circuit proceeded to reverse, not affirm, an OSHA citation based *1173 on a violation of internal company rules. And among the various reasons it offered for that holding, the court observed that a contrary result “would needlessly discourage [employers] from exhorting employees to take every possible safety precaution.” Id. Exactly so.
Having said that the Secretary has failed to prove a violation of industry norms isn’t to say she lacks the power to deviate from industry norms. Far from it. The Secretary can try to prove the standards of the industry in question are too lax even for a reasonably prudent employer — though of course “such negligence on the part of a whole industry cannot be lightly presumed” and “must be proven” with evidence. Ray Evers Welding Co., 625 F.2d at 732; see also L.R. Willson & Sons, Inc., 698 F.2d at 514 (“In the absence of [industry] evidence, the Secretary must provide alternative, probative evidence ... to meet his burden of proof.”). Alternatively, the Secretary can even more straightforwardly engage “the standard-making machinery provided in the Act” to announce safety regulations employers must abide whether they are customary or not — a process that places all comers on notice of the need to meet new and higher standards. B & B Insulation, 583 F.2d at 1371.
The problem in this case is the Secretary made no effort to pursue any of these options. Instead, she chose to proceed under a regulation that required her to prove that reasonably prudent employers in the industry would have provided Mr. Carder with more training than he' received from Compass. Then she failed to produce any proof on that question. And now she still seeks to hold Compass liable. The Secretary’s administrative powers and available policy options are considerable, even vast. But this far they do not lawfully stretch. Respectfully, I would grant the petition for review.